**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

KENNETH GRAU,

                Plaintiff,

    v.                                 No. 04-CV-148
                                                  (LEK/DRH)

JO ANNE B. BARNHART, in her Official
Capacity as Commissioner of the Social
Security Administration,

                Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| LEGAL AID SOCIETY OF<br>   NORTHEASTERN NEW YORK.<br>Attorney for Plaintiff<br>10-12 Lake Avenue<br>Saratoga Springs, New York 12866 | MARGARET DRAKE, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>   Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Kenneth Grau ("Grau ") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Grau moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos.

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

12, 13. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed and Grau's motion for a finding of disability be denied.

## I. Procedural History

On May 18, 1995, Grau filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 161-65.[2] That application was denied after the initial determination and following reconsideration. T. 152-55, 157-59, 618-21. Grau requested a hearing before an administrative law judge (ALJ), T. 82, which was held before ALJ J. Lawson Brown on February 18, 1997. T. 82-105. In a decision dated May 23, 1997, the ALJ denied Grau's claims. T. 56-75. On June 17, 1999, the Appeals Council remanded the ALJ's decision for further review. T. 46-48. A second hearing was convened on June 28, 2000 and on August 23, 2000, the ALJ again denied Grau's claims. T. 12-49. On December 12, 2003, the Appeals Council denied Grau's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 6-9.[3] This action followed.

## II. Contentions

Grau contends that the ALJ erred when he (1) failed to give proper weight to Grau's testimony, (2) improperly rejected the opinions of Grau's treating physicians, (3) relied on the testimony of the vocational expert which failed to take into account all of Grau's impairments,

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 9.

[3] Grau re-applied for benefits which he has been receiving since November 2000. See Pl. Brief (Docket No. 12) at 4.

2

and (4) failed to consider the combination of Grau's impairments. The Commissioner contends that there was substantial evidence to support the determination that Grau was not disabled.

### III. Facts

Grau is currently sixty-four years old and previously worked as a convenience store clerk, and as a secondary and college teacher. T. 99-103, 150. Grau has Bachelors' and Masters' degrees in physics and a doctoral degree in education. T. 85. Grau alleges that he became disabled on December 31, 1986 due to a left wrist injury, lower back pain, fatigue, poor concentration, and joint and muscle pain. T. 86-91, 174.

### IV.  Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2002).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevented him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

The reviewing court must determine if the Commissioner applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996)

## V.  Discussion

### A. Medical Evidence

In February 1985, Grau fractured his left wrist. T. 235, 255. In February 1986, Dr. Myung H. Kim noted that Grau's left wrist had diffuse tenderness, good muscle tone, fair strength, and no swelling, Grau continued teaching at Hudson Valley Community College, and the impression was left forearm pain of unknown origin and a left wrist sprain with a healed fracture. T. 353. X-rays revealed no acute or bony abnormalities and a healed fracture. T. 353. In May 1987, Dr. Kim performed an arthroscopy[4] on Grau's wrist. T. 467-70.

---

[4] Examination of the interior of a joint with an endoscope used for diagnosis and therapeutic procedures. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 142 (28th ed. 1994) [hereinafter DORLAND'S].

5

The findings were synovitis[5] of the left wrist with deteriorated cartilage and moderate degenerative changes. T. 255, 467-70. In December, Grau noted he was not using his brace and Dr. Kim recommended physical therapy. T. 351. In January 1988, Grau's left wrist showed no muscle atrophy, there was a limited range of motion, and sensory examination was normal. T. 349.

In July 1988, Grau underwent a surgical shortening of the distal ulna.[6] T. 466. In February 1989, Grau underwent a surgical repair of the distal ulna with replating and left iliac bone graft on his left wrist. T. 296-305. On May 23, 1989, Dr. James Nelson, an orthopedic surgeon, examined Grau and found that Grau had a marked degree of casually related disability, there was a marked restriction of motion as Grau was still recovering from surgery, and there was left forearm atrophy. T. 235-37. On October 12, 1989, Dr. Nicholas P. Teresi examined Grau and found that Grau had a normal gait, a half inch atrophy in his left arm, normal right upper and lower extremities, and while Grau had a moderate partial disability, he was able to return to his job as an educator. T. 232-33.

In December 1989, Dr. Kim noted that Grau's wrist strength was seventy to eighty percent of normal and x-rays showed progressive healing. T. 231. In January 1990, Grau had no atrophy, no neuro-vascular deficit, eighty to ninety percent strength, and was making satisfactory progress. T. 230. In July 1990, there was no swelling, no tenderness, and x-rays

---

[5] "[I]nflammation of the synovial membrane...characterized by fluctuating swelling due to effusion with a synovial sac." DORLAND'S 1645.

[6] "[T]he inner and larger bone of the forearm." DORLAND'S 949.

showed a satisfactorily healed shortening of the distal ulnar shaft with remaining hardware. T. 229.

On October 18, 1990, Dr. Richard L. Uhl removed the distal ulnar plate from Grau's left wrist contrary to the recommendation of Dr. Kim, who opined that the hardware should remain in place unless there were complications or infection. T. 333, 343, 471-72. An X-ray revealed that the ulna was completely healed. T. 343. Dr. Uhl opined that Grau was partially disabled with no use of the left upper extremity, recommended physical therapy, and noted that sensation was intact but there was limited supination and pronation. T. 343.

On January 17, 1991, Nancy A. Burks, Ph.D. evaluated Grau and found that he had a mild-to-moderate cognitive deficit of unexplained origin. T. 248-49. Dr. Burks opined that Grau's wrist injury should not be vocationally disabling but that the cognitive deficits Grau was currently demonstrating could possibly be vocationally disabling. T. 249. Dr. Burks found no impairment in Grau's ability to perceive and analyze visual stimuli, no impairment in word retrieval, mild impairments in non-verbal learning and memory, that Grau was functioning at a high average of intellectual abilities, and had a significant degree of depression. T. 248. On June 24, 1991, Dr. Buscema conducted a psychiatric evaluation of Grau and concluded that Grau had a major depressive disorder, a schizoid personality, a mild impairment in non-verbal learning, and a mild deficit in cognitive flexibility. T. 144.

On October 22, 1992, Dr. Warren Silverman examined Grau and found that there was a slight asymmetry in the left forearm muscles, motor strength was fairly symmetrical, sensory and reflex examinations were normal, and his gait was normal. T. 256. On October 28, 1992, an examination by Dr. Teresi revealed that Grau had a normal gait, good left hand

7

grip, normal right arm deep tendon reflexes, there were residual defects of the left wrist, a one-half inch atrophy of the forearm with restriction in pronation and supination, and while an x-ray revealed a well healed fracture, Dr. Teresi opined that Grau had a mild partial disability. T. 252.

Grau was treated periodically at the Pain Management Clinic at Albany Medical Center for musculoskeletal pain from June 1994 to February 2000. T. 499-521. Grau's pain did not radiate to his lower extremities, there was no paresthesias, numbness, or tenderness, straight leg raising was negative, strength and deep tendon reflexes were normal, range of motion in the neck and spine were limited, x-rays revealed no gross abnormalities other than minimal curvatures and degenerative changes, and there were no neurological deficits. T. 499-521. The impression was lumbar spondylosis,[7] mild scoliosis, mild left shoulder drop, degenerative osteoarthritis of the spine, myofascial pain,[8] muscular febricities, and epicondylitis.[9] T. 499-502. Grau used Transcutaneous Electric Nerve Stimulation (TENS),[10] participated in physical therapy, and began taking flexerol and codeine. T. 519-521. In January 1997, Dr. Ghiulamila found that Grau could not presently perform any activity

---

[7] "[A] general term for degenerative changes due to osteoarthritis." DORLAND'S 1564.

[8] "[P]ertaining to or involving the fascia surrounding and associated with muscle tissue." DORLAND'S 1092.

[9] "[I]nflammation of the epicondyle or of the tissues adjoining the epicondyle of the humerus." An epicondyle is "an eminence upon a bone, above its condyle." DORLAND'S 564.

[10] TENS involves the application of skin electrodes to nerve endings in order to block the transmission of pain signals to the brain. Streeter v. Barnhart, No. 01 Civ. 4066(DLC), 2002 WL 467504, at *14 n.4 (S.D.N.Y. Mar. 28, 2002).

requiring physical efforts due to degenerative osteoarthritis of the spine with recurring episodes of myofascial pain. T. 506.

On June 14, 1995, Dr. Mitch Flaum conducted a psychiatric examination of Grau and found that Grau was able to shift, focus and sustain attention, his speech was relevant, his thought process was logical and goal-oriented, he denied any depression or anxiety and did not need any therapy, and Dr. Flaum opined that Grau was psychiatrically and occupationally disabled and was unable to work due to pain. T. 365-66. On June 14, 1995, Dr. David Pulver examined Grau and found that Grau had a full range of motion in his left wrist with no restrictions in residual functioning. T. 362-63.

A mental residual functional capacity (RFC) assessment completed on July 12, 1995 found that Grau was not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, or adaptation, there was a slight degree of limitation in maintaining social functioning, he seldom had deficiencies of concentration persistence or pace and otherwise there were no other limitations. T. 202-14. A physical RFC assessment completed on July 20, 1995 found that Grau could lift and carry up to twenty pounds, could frequently lift and carry up to ten pounds, could stand and walk for six hours, sit, with normal breaks for six hours, and had limitation in manipulative function with no postural, visual, communicative, or environmental limitations. T. 215-22.

On November 16, 1995, Dr. David Horenstein, a psychologist, examined Grau and found that there was no evidence of significant psychiatric distress, the prognosis was guarded, and Grau would likely grow more depressed as his medical problems persisted or worsened. T. 429-30. On March 8, 1999, Dr. Frank Lizzi, who treated Grau with physical

therapy for four months, found that Grau could not be gainfully employed at this time due to degenerative disease of the spine with chronic back pain. T. 433.

.

## B. Credibility

Grau contends that the ALJ erred when he discredited his subjective complaints and his testimony regarding his daily activities. The Commissioner contends that the ALJ properly evaluated Grau's credibility.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2005); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2005); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation as well as the medical evidence of impairment are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v.

10

Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999) (Kahn, J.). If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Secretary of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2005).

The ALJ found that Grau's allegations as to the frequency and severity of his symptoms and limitations were not credible. T. 25. Grau testified that his left wrist injury, spinal deterioration, back fatigue, infections, inability to remember and concentrate, and depression prevented him from returning to work. T. 85. Grau also testified that he could not lecture, was tired all the time, was limited in lifting and pushing, limited in fine motor skills,

11

could no longer play guitar, had trouble sitting, standing, and walking due to constant and significant pain, could not do housework, and had problems sleeping. T. 85-97. However, Grau was able to research and prepare a detailed medical report which he presented to Dr. Silverman, went ballroom dancing two times per week in 1994 and 1995, read and used a computer at a local college to keep himself current, and reported that he could cook, clean, shop, and do laundry. T. 89, 253-57, 354, 365, 387, 396, 407, 429.

In addition, the medical evidence supports the ALJ's finding in this regard. Grau's left wrist showed no muscle atrophy, sensory examination was normal, there was no neuro-vascular deficit, there was eighty to ninety percent strength, and Grau was making satisfactory progress. T. 230, 349. X-rays showed a satisfactorily healed shortening of the distal ulnar shaft. T. 229. Grau did not receive regular care or medication for his depression and relied only on over-the-counter medication for pain. T. 354. Treatment of his back impairment was conservative. In regard to Grau's mental impairment, Dr. Buscema found only a mild deficit in cognitive flexibility, Dr. Flaum noted that Grau could perform household and self-care activities, was able to shift focus and sustain attention, that his speech was relevant, his thought process was logical and goal-oriented, that Grau denied any depression or anxiety, nor require any therapy, Dr. Horenstein found no evidence of significant psychiatric distress, and Dr. Burks found that Grau was operating at a high level of intelligence. T. 144, 248, 365-66, 429. Therefore, there is substantial evidence in the record to support the ALJ's credibility assessment as to both Grau's physical and mental symptoms.

It is recommended that the Commissioner's finding in this regard be affirmed.

## C. Treating Physician's Rule

Grau contends that the ALJ improperly rejected the opinions of his treating physicians. The Commissioner contends that the ALJ properly weighted the opinions of Grau's treating physicians.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, treating physicians' diagnoses, subjective evidence of disability, and pain related by the claimant . Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126,134 (2d Cir. 2000). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord that opinion: (1) the frequency of examination, and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. Schaal, 134 F.3d at 504. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent is the opinion, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2005).

13

Grau contends that the ALJ improperly rejected the opinions of Mary Zeitner, Dr. Adomfeh, and Dr. Ghiulamila . The ALJ found that these opinions were not well supported by the medical evidence. Mary Zeitner and Charles Adomfeh treated Grau at Whitney Young Health Center and concluded that Grau was currently disabled from all employment due to the combination of low back pain, left forearm and wrist pain and limitation, chronic fatigue syndrome, and psychiatric problems. T. 497-504, 506-17, 574-77, 608.  There are no objective findings in the records to support this opinion. While Grau complained of musculoskelatal pain and chronic fatigue, there are no objective tests to support an opinion of total disability. X-rays were relatively normal, treatment was conservative, there were no recommendations for surgery, there were no additional diagnostic procedures recommended or performed, and the only basis for this opinion was Grau's subjective complaints.

Dr. Ghiulamila, a treating physician, found that Grau could not presently perform any activity requiring physical efforts due to degenerative osteoarthritis of the spine with recurring episodes of myofascial pain. T. 506. However, on examination, Grau's pain did not radiate to his lower extremities, there was no paresthesias, numbness, or tenderness, straight-leg raising was negative, strength and deep tendon reflexes were normal, and while range of motion in the neck and spine were limited, x-rays revealed no gross abnormalities other than minimal curvatures and degenerative changes, and there were no neurological deficits.  T. 499-521.  While Dr. Lizzi  found that Grau could not be gainfully employed due to severe back problem and multiple wrist surgeries, x-rays of Grau's spine were relatively normal other than the minimal curvature and degenerative changes. T. 499-521, 577. In addition, Dr. Kim,

14

a treating physician, found that Grau's wrist had improved, x-rays showed healing, and Grau was recovering. T. 252.

Substantial evidence supports that the ALJ accorded the proper weight to the opinions of treating sources. Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### D. Vocational Expert

Grau contends that the ALJ erred in relying on the vocational expert's testimony. The Commissioner contends that the ALJ properly relied on the vocational expert's testimony.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2005). "In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding the claimant's capabilities. Martone, 70 F. Supp. 2d at 150 (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy. State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960 (2005).

The Commissioner may present "'testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations.'" Rosa, 168 F.3d at 78 (quoting Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20

C.F.R. § 404.1566(a) (1997). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy." 20 C.F.R. § 404.1566(b). If the claimant can perform work that exists in the national economy, a finding of not disabled will be made. Id.

Although the ALJ found that Grau could return to his past relevant work, he also consulted a vocational expert pursuant to the order of the Appeals Council. Grau contends that the vocational expert did not take into account his specific limitations in the hypothetical question which was asked, including his inability to lift ten pounds or his mental impairments. In addition, Grau contends that the ALJ did not have accurate information regarding numbers of educational consultants, educational specialists, or research workers in the local or national economies.

The ALJ found that Grau retained the RFC to perform his past relevant work as a director of technology. The ALJ also found that Grau had the RFC to perform work which involved sitting, standing, and walking for six hours per day and lifting up to ten pounds frequently and twenty pounds occasionally where use of the left wrist might be limited. This RFC finding is supported by substantial evidence in the record. While Grau's wrist had not regained full use, it was substantially healed and the ALJ took this restriction into account in making his assessment. Grau's left wrist showed no muscle atrophy, there was a limited range of motion, sensory examination was normal, there was no swelling, no tenderness, x-rays showed a satisfactorily healed shortening of the distal ulnar shaft with remaining

16

hardware, and Dr. Pulver found that Grau had a full range of motion in his left wrist with no restrictions in residual functioning. T. 229, 343, 349, 362-63.

In addition, there is no evidence in the record to support a finding that Grau's musculoskeletal pain prevented him from sitting, standing, or walking for more than six hours. Grau's pain did not radiate to his lower extremities, there was no paresthesis, numbness, or tenderness, straight-leg raising was negative, strength and deep tendon reflexes were normal, range of motion in the neck and spine were limited, x-rays revealed no gross abnormalities other than minimal curvatures and degenerative changes, and there were no neurological deficits. T. 499-521. Dr. Teresi found that Grau was able to return to his job as an educator, an RFC assessment found that Grau could lift and carry up to twenty pounds, could frequently lift and carry up to ten pounds, could stand and walk for six hours, sit, with normal breaks for six hours, and had limitation in manipulative function with no postural, visual, communicative, or environmental limitations. T. 215-22, 232-33.

Grau's complaints of mental and cognitive impairments are not supported by the evidence. A mental RFC found that Grau was not significantly limited in understanding and memory, he demonstrated sustained concentration, persistence, social interaction, and adaptation, and there was only slight degree of limitation in maintaining social functioning. T. 202-14. Dr. Flaum found that Grau was able to shift, focus and sustain attention, his speech was relevant, his thought process was logical and goal-oriented, he denied any depression or anxiety, and he did not require therapy. T. 365-66. Dr. Burks found that Grau had a mild-to-moderate cognitive deficit of unexplained origin, was of above-average intelligence, there was no impairment in his ability to perceive and analyze visual stimuli, no impairment in word

17

retrieval, mild impairments on word list generation and non-verbal learning and memory, and had a significant degree of depression. T. 248. While Dr. Burks found that cognitive deficits that Grau demonstrated were likely to interfere with his vocational functioning, there was no support in her findings. T. 248. Dr. Buscema found that Grau had only a mild impairment in non-verbal learning and a mild deficit in cognitive flexibility. T. 144. Dr. Horenstein found no evidence of significant psychiatric distress. T. 429-30.

The vocational expert testified that Grau had transferable skills based on Grau's level of education and teaching experience and that based on Grau's testimony, Grau could perform work as an educational specialist and researcher with the assumption of a mild non-exertional impairment, the ability to lift and carry ten pounds, and that these positions would not require Grau to bend, stoop, or squat. T. 117. This finding was based on a hypothetical question which was consistent with the ALJ's findings regarding Grau's exertional and non-exertional impairments.

The vocational expert also testified that there were a total of 386,000 educational administrator jobs in the national economy and between 1610 and 1670 in the regional economy, and that all of the examples of jobs given by the vocational expert that Grau could perform were included in this category. T. 130-32. The vocational expert sufficiently provided statistics regarding numbers of jobs in the national and regional economies within that category. Therefore, there were jobs that existed in the national economy that Grau could perform with the limitations found by the ALJ.

It is recommended that the Commissioner's finding in this regard be affirmed.

### E. Combination of Impairments

Grau contends that the ALJ failed to consider the combination of his impairments. The Commissioner contends that the ALJ properly evaluated all of Grau's impairments.

Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. The next inquiry is whether a claimant retained the RFC to perform his or her past work. This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps. 20 C.F.R. § 404.1523 (2005); Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995).

Here, Grau contends that the ALJ did not take into account Grau's non-exertional complaints, including mental and cognitive problems, muscles aches, fatigue, and pain. The ALJ discussed Grau's complaints of pain, including his back pain, and Grau's mental impairments, including his intelligence and cognitive abilities. The ALJ also discussed Grau's subjective complaints of muscle aches, pain, and fatigue. T. 20. The ALJ properly considered all of the problems presented by Grau in the record and presented in his testimony. The ALJ conducted a detailed analysis of the medical records in a fourteen page opinion. The ALJ also discussed the impairments and his symptoms and concluded that Grau could perform work related activities without limitations. T. 25.

Frau's contention here should be rejected.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, and Grau's motion for a finding of disability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATE: November 4, 2005
       Albany, New York

*David R. Homer*
United States Magistrate Judge